IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      Case No. 03-cr-00274 JAP

STEPHEN THOMAS PAULINO,

    Defendant.

**REPLY TO RESPONSE TO DEFENDANT'S MOTION TO REDUCE
SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018**

    Defendant Stephen Thomas Paulino, by and through undersigned counsel, respectfully submits this reply to the government's response brief filed on May 23, 2019 (Doc. 162).

## ARGUMENT

**I.    Mr. Paulino Is Eligible for Relief Under the First Step Act.**

    The government first asserts that Mr. Paulino is not entitled to relief because "*Apprendi* . . . claims are unavailable under 18 U.S.C. § 3582(c)(2)." (Doc. 162 at 4.) This argument is flawed for at least two fundamental reasons. First, as explained by Mr. Paulino in his motion and left unaddressed by the government, Mr. Paulino's motion is brought pursuant to § 3582(c)(1)(B) and not § 3582(c)(2). (Doc. 155 at 5.) Thus, any case law discussing § 3582(c)(2) is simply irrelevant. Second, Mr. Paulino is not bringing an *Apprendi* claim. Instead, he is asserting his right granted to him by Congress to seek a reduced sentence pursuant to the First Step Act.

    The First Step Act allows defendants convicted of a "covered offense" to seek a reduced sentence. A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that

was committed before August 3, 2010." First Step Act § 404(a). Mr. Paulino was convicted of possessing with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B). (Docs. 30 & 48.) There can be no dispute that these statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act. Mr. Paulino, therefore, is entitled to seek a reduced sentence under the First Step Act.

## II.     Mr. Paulino's Purported Admissions Do Not Affect His Eligibility for Relief.

At its core, the government's argument that Mr. Paulino is not entitled to relief hinges on its assertion that Mr. Paulino, either directly or through counsel, admitted to possessing 33 grams of cocaine base.[1] Thus, the government's theory goes, since Mr. Paulino purportedly "admitted to a quantity of cocaine base greater than the 28 grams [necessary for a conviction of a B-level offense as currently codified, he] is still guilty of a B-level offense, and his motion for relief should be denied." (Doc. 162 at 5.) The government's theory should be rejected.

Common sense reveals the fallacy of the government's assertion that Mr. Paulino "is still guilty of a B-level offense" because his actual conduct consisted of possessing with intent to distribute more than 28 grams of cocaine base. Mr. Paulino pled guilty *only* to the crime of possessing with intent to distribute 5 grams or more of cocaine base. The government's theory would turn upside down an untold number of cases in which defendants plead guilty to a C-level offense even though their admitted actual conduct would give rise to a B-level, or even an A-

---

[1]     While the government relied on counsel's purported admissions, it asserted in its response that the yet-to-be-obtained transcript of the change of plea hearing might contain a direct admission by Mr. Paulino as to the amount of drugs he possessed. (Doc. 162 at 6.) The transcript reveals that Mr. Paulino admitted to "possess[ing] cocaine" but did not directly admit to a specific amount. (Doc. 42-3 at 17.) Mr. Paulino, however, did not object to the government's proffer that he possessed 33 grams of cocaine base. (*See id.*) Regardless of whether the Court deems this an "admission" by Mr. Paulino that he possessed 33 grams of cocaine base, this is irrelevant as explained below.

level, offense. Under the government's theory, these untold number of defendants are actually guilty of the greater offense (and their statutory minimums and maximums should thus be calculated by that greater offense) even though they pled only to a C-level offense. Such simply is not the case.

Indeed, as numerous courts understand, what matters for purposes of determining eligibility under the First Step Act is the ***offense of conviction***—not the amount of drugs underlying the offense conduct and admitted or unobjected to. A prime example is the recent case of *United States v. Pierre*, --- F. Supp. 3d. ---, 2019 WL 1495123 (D.R.I. Apr. 5, 2019), which is virtually on all fours with this case. Just as Mr. Paulino, Pierre pled guilty to one count of possessing with intent to distribute 5 grams or more of cocaine base. *Id.* at *3; *see also* Doc. 42-3 at 4, 22 (Mr. Paulino pleading guilty to one count of "possess[ing] with the intent to distribute 5 grams or more of cocaine base"). And, just as in this case, Pierre's actual conduct consisted of possessing slightly more cocaine base than the current amount necessary to trigger a B-level offense. *Pierre*, 2019 WL 1495123, at *4 ("During the plea colloquy, Pierre admitted to possessing with the intent to distribute 28.77 grams of cocaine base."). The issue, then, was whether in enacting the First Step Act

> Congress intended . . . district court[s] to look to the actual offense conduct for which the defendant was convicted (for example, using the transcript from the change of plea colloquy to determine drug quantity), or to look simply to the offense of conviction (i.e., the federal criminal statute the defendant violated).

*Id.* "[J]oining other courts that have weighed in on the issue," the district court in *Pierre* held that "the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 to determine eligibility; it should refrain from delving into the particulars of the record to determine how this specific defendant committed his or her offense or

3

conviction." *Id.* at *5; *see also, e.g.*, *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) ("It is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); *United States v. Brown*, 2019 WL 1895090, at *2 (D. Minn. Apr. 29, 2019) (rejecting government's argument "that Brown was not convicted of a covered offense because he was responsible for 89 grams of crack cocaine" and agreeing with defendant "that the court should consider only his offense of conviction—possession with intent to distribute more than 5 grams of crack cocaine"); *United States v. Martin*, 2019 WL 1558817, at *3 (E.D.N.Y. Apr. 10, 2019) (rejecting government's position that defendant ineligible for relief "because he stipulated that the amount involved in the offense was 1.5 kilograms of cocaine base [and, thus,] the penalties that defendant faced were not technically modified by enactment of the First Step Act.").

The cases the government cites in support are inapposite as they involve situations in which the Court is selecting a guideline sentence based on relevant conduct—not on the situation here where the issue is one of statutory minimums and maximums—or in which the defendant pled guilty to an appropriately-charged offense. *See United States v. Cardenas-Diaz*, 166 F. App'x 958, 959 (9th Cir. 2006) (no error where defendant pled guilty to indictment charging him with A-level offense of conspiracy to sell and possessing with intent to sell more than 500 grams of methamphetamine); *United States v. Giraldo*, 132 F. App'x 800, 802-05 (no error where court calculated guidelines based on defendant's admitted conduct).

### III. The Court Should Reject the Government's Arguments as to Why It Should Not Exercise Its Discretion and Reduce Mr. Paulino's Sentence to Time Served.

The government's theory that Mr. Paulino would receive a "windfall" should the Court reduce his sentence should be rejected. (*See* Doc. 162 at 7.) As the court in *Pierre* understood,

4

this would require "the Court to employ a prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentence would have looked had the Fair Sentencing Act of 2010 been in effect." 2019 WL 1495123, at *5. Numerous other courts have rejected the government's "windfall" argument. *See, e.g.*, *United States v. Ancrum*, 2019 WL 2110589, at *4 (rejecting government's argument that a reduction would result in "an unjustified windfall"); *United States v. Dodd*, --- F. Supp. 3d ---, 2019 WL 1529516, at *3 (S.D. Iowa April. 9, 2019) ("[T]he Court is unwilling to engage in a series of hypotheticals about what might have happened had aspects of the case been fundamentally altered.").

    The argument put forth by the government also ignores the reality of Mr. Paulino's situation, i.e., that he was sentenced during an era of incredibly harsh mandatory penalties for crack-cocaine offenders—penalties that Congress and the Sentencing Commission have sought several times over the past decade to reduce. Similarly, the government's argument that this Court "presumed" a sentence of 262 months for Mr. Paulino was "appropriate" because it did "not vary downward even though [it] could have", (Doc. 162 at 8), is without any merit. As the government should understand, Mr. Paulino was sentenced during a time when the guidelines were mandatory and the Court had no discretion whatsoever to vary below the guidelines. (*See* Doc. 42-3 at 10 ("Under guideline sentencing a judge must take into account all relevant information about you and ***must*** select a sentence from within a guideline range." (emphasis added)). Reducing Mr. Paulino's sentence to time served would not at all increase any sentencing disparity. In reality, it would decrease the disparities that Congress has sought to rectify through passage of the Fair Sentencing Act and the First Step Act. Should the Court reduce Mr. Paulino's sentence to time served, this would, accounting for good time credits accrued, effectively mean a sentence of 225 months. Counsel is hard pressed to believe that that the Court would impose

such a draconian sentence were Mr. Paulino to appear before it today under the same set of facts that existed in 2003.

## CONCLUSION

Wherefore, for the foregoing reasons and those set forth in his *Emergency Amended Motion for Resentencing Pursuant to Section 404 of the First Step Act of 2018*, (Doc. 155), Defendant Stephen Thomas Paulino respectfully asks the Court to impose a reduced sentence of time served and six years of (un)supervised release. Because he is eligible for immediate release, Mr. Paulino respectfully requests an expedited decision.

Respectfully submitted,

/s/ *Todd A. Coberly*
Todd A. Coberly
1322 Paseo de Peralta
Santa Fe, NM  87501
(505) 989-1029
coberlylaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May, 2019, I filed the foregoing using the CM/ECF system, which will electronically send notification of such filing to all counsel of record.

/s/ *Todd A. Coberly*
Todd A. Coberly