## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | Case No. 03-CR-00274 JP |
| ) | |
| STEPHEN THOMAS PAULINO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**UNITED STATES' SUR-REPLY TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018**

The United States of America hereby files its sur-reply to Defendant's Motion for Consideration for Reduction of Sentence pursuant to 18 U.S.C. § 3582 and the First Step Act of 2018.

**I.   Facts**

On May 5, 2003, the defendant, Mr. Paulino, plead guilty to one count of possession with the intent to distribute of 5 grams and more of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Doc. No. 42. Before his plea, the United States had filed a sentencing enhancement against the defendant pursuant to 21 U.S.C. § 851 because he had at least one prior felony drug conviction. Doc. No. 32.

During his plea hearing, this Court asked the Assistant United States Attorney to provide a factual basis for the defendant's plea. During her recitation she stated:

> 13  53 net grams of cocaine base.  On the person of Mr. Paulino
> 14  were 33 net grams of cocaine base.  And, also, Mr. Paulino had

Doc. 42-3 at 14. Later in the colloquy, this Court asked the defendant if "everything she said [was]

correct", to which Mr. Paulino replied:

> 23        MR. PAULINO: Sir, yes, I was in the car and I did
> 24   possess cocaine on me, and I had the money on me. However, I

*Id.* at 17. Subsequent to that and through counsel, the defendant admitted to possessing 33 grams of cocaine base twice more. *Id.* at 18, l. 24; 19, l. 17.

Prior to his sentencing hearing the defendant filed an objection to the drug quantity attributed to him in the Presentence Report (PSR). Doc. 47. In the objection, the defendant admitted through counsel that the appropriate amount of cocaine base to attribute to him was 32 grams. *Id.* at 2. The PSR attributed 85.6 grams of cocaine base to the defendant. *See Id.* at 1.

On July 24, 2003, this Court held a sentencing hearing for the defendant. ECF. No. 49. Based on his criminal history, United States Probation ("Probation") determined the defendant was a career offender. *See* ECF No. 154. Having plead guilty to a B-level offense with an 851 enhancement, the defendant was subject to a maximum term of life in prison. *See* 21 U.S.C. § 841(b)(1)(B). As a result, his Base Offense Level ("BOL") as a career offender was 37 which, with a reduction of three levels for acceptance of responsibility, resulted in a guideline range of 262 to 327 months. *See* Doc. No. 154; U.S.S.G. § 4B1.5(a)(1)(B). This Court sentenced the defendant to 262 months to be followed by eight years of supervised release subject to special conditions. Doc. No. 154.

On June 25, 2008, the defendant filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense based on the 2007 Crack Cocaine Amendment. Doc. 78. On August 8, 2008, that motion was denied. Doc. 99. On November 17, 2010, the defendant field another Motion for Retroactive Application of Sentencing Guidelines based on the 2010 Fair

Sentencing Act ("Fair Sentencing Act"). Doc. 139. On December 3, 2013, that motion was also denied. Doc. 148.

On December 21, 2018, the First Step Act of 2018 (FSA) was enacted into law. Pub. L. No. 115-319. Section 404(b) of the FSA allows a court to resentence defendants sentenced prior to August 3, 2010 "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *Id*. Section 2 of the Fair Sentencing Act changed the threshold amount of cocaine base required for a "B-level" offense from 5 grams or more to 28 grams or more. Pub. L. No. 111-220.

On May 8, 2019, the defendant filed an Emergency Motion to Reduce Sentence under 18 U.S.C. § 3582 and the FSA. ECF No. 155. The next day Judge Browning schedule the hearing for May 17, 2019. Doc. 157. On May 15, 2019, the United States filed a continuance and the hearing was reset for May 23, 2019. Docs. 158 and 159. On May 23, 2019, the United States filed its response. That same day the hearing in front of Judge Browning was vacated and reassigned to Judge Parker. Doc. 163. Again on that date, Judge Parker set the hearing for May 31, 2019. The defendant filed his reply on May 27, 2019. This is the United States' sur-reply.

The defendant has been in custody since January 14, 2004. *See* ECF Nos. 7 and 11. That is period of over 196 months.

**II.   Analysis**

The United States believes the general analytical framework outlined in *United States v. Boulding*, No. 1:08-cr-65-01, 2019 U.S. Dist. LEXIS 83018 (W.D. Mich. May 16, 2019), should be followed by this Court. First, the court should determine if the defendant is eligible for

consideration of a reduced sentence under the FSA. At *17-19. Second, if the defendant is eligible, the court should then determine whether it should exercise the discretion granted to it under the FSA to reduce the defendant's sentence. Third and final, if the court determines it is appropriate to reduce the defendant's sentence, then it needs to determine what the appropriate new sentences is. Furthermore, the United States believes the Court should use the "offense controls" theory when deciding whether and how to exercise its discretion. *United States v. Blocker*, No. 4:07cr36-RH, 2019 U.S. Dist. LEXIS 79934, *13 (N.D. Fla. Apr. 25, 2019).

### A. The defendant is eligible for consideration of a reduced sentence under the FSA.

Under the FSA, the court may only impose a reduced sentence for a "covered offense." Pub. L. No. 115-319, § 404(b). A "covered offense" is one that whose "statutory penalties . . . were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . [and] committed before August 3, 2010." *Id.* at §404(a). Section 2 of the Fair Sentencing Act raised the amount of crack cocaine necessary to trigger the statutory mandatory minimum sentence in crack cocaine offenses from 50 to 280 grams and for "B-Level" crack cocaine offenses from 5 grams to 28 grams. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(iii). "Under the plain language of the Act, whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated. If that statute is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act, it is a 'covered offense.'" *Boulding*, 2019 U.S. Dist. LEXIS 83018 at *17 (citing *United States v. Davis*, No. 07-CR-245S (1), 2019 U.S. Dist. LEXIS 36348, 2019 WL 1054554, at *3 (W.D.N.Y. Mar. 6, 2019)) (internal citation and quotations omitted) "This is a categorical decision based on the type of prior conviction, not any particular quantity determination."

4

*Boulding*, 2019 U.S. Dist. LEXIS 83018 at *17. However, the court shall not entertain such a motion to reduce a sentence where the sentence was originally imposed or previously reduced in accordance with the Fair Sentencing Act. Pub. L. No. 115-319, § 404(c). These limitations are also categorical in nature. *Boulding¸* 2019 U.S. Dist. LEXIS 83018 at *18.

Here, the defendant plead guilty to a violation of 21 U.S.C. 841(a)(1)(a) and (b)(1)(B). The statutory penalties in 21 U.S.C. § 841(b)(1)(B) were modified by the Fair Sentencing Act. Furthermore, the defendant plead and was sentence prior to August 3, 2010. Finally, the defendant's sentence was not previously imposed or reduced in accordance with the Fair Sentencing Act. As such, the defendant is eligible for consideration of a reduced sentence under the FSA because he was sentenced for a "covered offense" and is not subject to the limitations of Section 404(c).

Arguments about the application of 18 U.S.C. § 3582 to the FSA are an unnecessary distraction. First, the FSA grants the Court the authority to reduce a sentence in Section 404(b), i.e., the act is self-sufficient. Second, such a grant of authority is expressly provided for in 18 U.S.C. § 3582(c)(1)(B): a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." Thus, the FSA provides all of the authority the Court needs to reduce a sentence and does so in a manner consistent with § 3582.

> **B. The Court should not exercise its discretion to reduce the defendant's sentence because the defendant would not have received a reduced sentence if he had been sentenced "as if" Section 2 of the Fair Sentencing Act was in effect at the time he committed his offense and doing so would create sentencing "anomalies" inconsistent with the Congressional intent.**

The FSA grants the Court the discretion whether to reduce a sentence. Pub. L. No. 115-319, § 404(b) ("A court . . . *may* . . . impose a reduced sentence") (Emphasis added). Nothing in the FSA is meant to require the court to reduce a sentence. Pub. L. No. 115-319, § 404(c). Thus, after determining that defendant is eligible for consideration of a reduced sentence, the court should then determine *if* it should exercise its discretion to reduce the sentence. *Boulding¸* 2019 U.S. Dist. LEXIS 83018 at *18.

In exercising its discretion, the language of the statute requires the Court to apply the "offense controls" theory. *United States v. Blocker*, 2019 U.S. Dist. LEXIS 79934, *13. Section 404(b) directs the Court to "impose a reduced sentence *as if* sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." This requires the court to engage in a retroactive analysis of the covered offense from the time it was committed through the sentence. The only fact it directs the court to retroactively change in its analysis is that of the statutory threshold amounts changed in sections 2 and 3 of the Fair Sentencing Act. There is no Congressional authority to change any other facts or laws. Furthermore, there is no Congressional authority to take into account facts not present during the original sentencing. All that is authorized is a possible reduction "as if" the modified threshold amounts were in place at the time of original sentencing. This is a narrow analysis that creates a narrow decision for the court to make: "what sentence would have been imposed had the Fair Sentencing Act been in effect when [the defendant] committed his offenses[?]" *Blocker*, 2019 U.S. Dist. LEXIS 79934 at *11; *see Dillon v. United Sates*, 560 U.S. 817, 825-26 (2010) (In similar proceedings under 18 U.S.C. § 3582(c)(2), the provision only applied to a "limited class of prisoners" with a "narrow scope" to "authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing

6

proceeding"). The answer to that question does not turn on what the actual indictment charged, but on what it would have charged, and what result it would have produced, had the Fair Sentencing Act been in effect at that time." *Id.*

This approach is consistent with the Congressional intent. Some courts claim there is no Congressional intent to guide them along in their decision. *See, e.g., United States v. Pierre,* No. 07-003 WES, 2019 U.S. Dist. LEXIS 58895, *10 (D.R.I. Apr. 5, 2019). Not so. While the FSA is bereft of Congressional intent, the Fair Sentencing Act – which it makes retroactive – makes its intent clear. Specifically, Congress enacted the Fair Sentencing Act in order to reduce the sentencing disparity between powder and crack cocaine defendants through an increase in the threshold amounts of crack cocaine. *Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). Thus, the Congressional intent of the FSA the Court should follow is provide pre-Fair Sentencing Act defendants a sentence consistent with similarly situated post-Fair Sentencing Act defendants, i.e., "as if" he had been sentenced after the Fair Sentencing Act was passed. To put it in more concrete and relevant terms, if a defendant plead guilty to a B-level offense with between 5 and 28 grams of crack cocaine, then the court should provide relief; if the defendant had more the 28 grams, then relief was never his to begin with.

Here, the defendant was charged with and plead guilty to a B-level offense. In the process of his guilty plea he admitted to possessing 33 grams of cocaine base. Those 33 grams of cocaine base are more than the new 28-gram threshold amount required for a B-level offense under the Fair Sentencing Act. Thus, by his own admission, there is evidence beyond a reasonable doubt that the defendant was in possession of a B-level quantity of crack cocaine. Applying the retroactive analysis, the Court should conclude that the Government had the factual basis for a B-level offense,

7

it would have charged the defendant with a B-level offense just like it did under the old thresholds, and the defendant had no reason not to plead guilty like he did before. Because the end result would have been the same, the court should not reduce the defendant's sentence and deny his motion.

To do otherwise would indeed create a "windfall", i.e., an unintended benefit, for the defendant. *See* Black's Law Dictionary, Eighth Edition, p. 1631. Nothing in the facts available to the court indicate that the defendant would have been charged with or plead to anything less than a B-level offense because he had more than 28 grams of crack cocaine. Were he now to be retroactively sentenced "as if" he had less than 28 grams of crack cocaine, that would "create new anomalies – new sets of disproportionate sentences – not previously present" that the Supreme Court sought to avoid when it applied the Fair Sentencing Act to pre-Act offenders who had not yet been sentenced. *Dorsey*, 567 U.S. at 278. This case in particular would actually create two new sets of anomalies. First, it would provide the defendant with a reduced sentence to which he would not have otherwise had relative to post-*Dorsey* defendants. Second, it would provide the defendant with a reduced sentenced relative to other pre-*Dorsey* B-level defendants because they have already released. In effect, the defendant would get a reduced sentence relative to them *because* he had a *greater* criminal history. These are the exact kind of disparities Congress enacted the Fair Sentencing Act to prevent. *Id.* at 276. As a retroactive extension of the Fair Sentencing Act, it is safe to assume the FSA was enacted to prevent them as well.

Understandably, the defendant takes the position that the "indictment controls" theory. *See Blocker*, 2019 U.S. Dist. LEXIS 79934 at *10. In doing so it relies heavily on the reasoning in *Pierre*, 2019 U.S. Dist. LEXIS 58895. However, *Pierre* is a flawed opinion because it only reaches

the issue of eligibility and then summarily grants relief without justifying why. The court appears to do this because it believes taking into account the facts of the case would "problematic." *Pierre*, 2019 U.S. Dist. LEXIS 58895, *12. Specifically, doing so would require the Court to employ a "prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect." *Id*. But this is exactly what Congress directed the court to do when it used the "as if" language in Section 404(b). In fact, "courts routinely resolve . . . issues like this." *Blocker*, 2019 U.S. Dist. LEXIS 79934, *12. For example, when courts address ineffective-assistance-of-counsel claims or petitions for writs of habeas corpus. *Id*. Moreover, it does not require a "prosecutor-friendly" machine. Rather, it requires a machine that comports with the Congressional intent to reduce the disparity be powder and crack cocaine defendants as reflected in the modified statutory threshold amounts. For example, a defendant with only 10 grams of crack cocaine would get a "defense-friendly" result. Because *Pierre* and its "indictment controls" theory is flawed, the Court should not follow it as requested by the defense.

Because the Court should not exercise its discretion to reduce the defendant's sentence, there is no need for the Court to consider what the reduction should be.

**III.    Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's Motion because Defendant would not have received a reduced sentence under the Fair Sentencing Act and to provide him with such relief under the FSA would create an unintended sentencing disparity.

//

//

//

                                                        Respectfully submitted,

                                                        JOHN C. ANDERSON
                                                        United States Attorney

                                                        *Mark Pfizenmayer*
                                                        MARK C. PFIZENMAYER
                                                        Assistant U.S. Attorney
                                                        201 Third St. NW, Suite 900
                                                        Albuquerque, NM 87102
                                                        (505) 346-7274
                                                        (505) 346-7296 fax

I certify that a copy of this pleading was delivered
via CM/ECF to counsel for the defendants.