**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

   v.                                                      Case No. 03-CR-0274 JAP

STEPHEN THOMAS PAULINO,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

On May 8, 2019, Defendant Stephen Thomas Paulino ("Defendant") filed a motion to reduce his sentence under the First Step Act.[1] On May 23, 2019, the United States responded, arguing that the Court should exercise its discretion and deny Defendant's Motion.[2] On May 27, 2019, Defendant replied.[3] On May 29, 2019, the Government filed a sur-reply.[4] The United States Probation Office for the District of New Mexico filed a retroactive sentencing review.[5] The Motion is fully briefed.

On May 31, 2019, the Court heard argument on the Motion. Mark C. Pfizenmayer appeared on behalf of the Government. Defendant waived his presence at the hearing[6] and was

---

[1] *See* EMERGENCY AMENDED MOTION FOR RESENTENCING PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018 (Doc. 155) ("Motion").
[2] *See* UNITED STATES'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018 (Doc. 162) ("Response").
[3] *See* REPLY TO RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018 (Doc. 166) ("Reply)".
[4] *See* UNITED STATES' SUR-REPLY TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018 (Doc. 167) ("Sur-Reply").
[5] *See* MEMORANDUM (Doc. 154)
[6] *See* WAIVER OF DEFENDANT'S PRESENCE (Doc. 156).

represented by Todd A. Coberly. After reviewing the briefs, the memorandum, and considering the arguments of counsel, the Court will grant Defendant's Motion.

## I. FACTS & PROCEDURAL HISTORY

On January 13, 2003, an undercover Albuquerque Police Officer and a Drug Enforcement Agent (hereinafter "agents") arranged to make a two-ounce crack cocaine buy with codefendant Dominic Martinez. When Mr. Martinez arrived for the transaction, Defendant was sitting in the front passenger seat. After the agents completed the transaction, they arrested Mr. Martinez and Defendant. During the search incident to arrest, the agents found 53 net grams of cocaine base on Mr. Martinez and 32 net grams of cocaine base and $4,700.00 cash on Defendant.[7]

On March 26, 2003, the Government filed a two-count SUPERSEDING INDICTMENT (Doc. 30). The Superseding Indictment charged Defendant with conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 841(a)(1) and (b)(1)(A) and possession with intent to distribute 5 grams and more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). *Id.*

On March 27, 2003, the Government filed an information under 21 U.S.C. § 851 asserting that as a career offender, Defendant was subject to the enhanced penalty provisions of 21 U.S.C. §§ 841(b)(1)(A) and (b)(1)(B).[8] The enhanced penalty provision subjected Defendant

---

[7] The record contains a disparity in the amount of cocaine base attributed to Defendant. The Presentence Report states that the Defendant had 33 grams of cocaine base; however, in his plea hearing Defendant admitted to only 32 grams. Because Defendant acknowledged possession of 32 grams of cocaine base, the Court will use that number.
[8] *See* ENHANCEMENT INFORMATION (Doc.32).

to a mandatory minimum sentence of ten (10) years, and a maximum term of life imprisonment. *Id.* On May 5, 2003, Defendant pleaded guilty to Count II of the Superseding Indictment.

The Sentencing Guidelines incorporates the enhanced penalty provision of § 841(b)(1)(B) in the Career Offender Guideline, § 4B1.1. Defendant's statutory maximum term was life imprisonment, which under § 4B1.1(b) resulted in an offense level of 37 and a criminal history category of VI. After deducting three points under U.S.S.G. §§ 3E1.1 and 4B1.1(b) for acceptance of responsibility, Defendant had a total offense level of 34, which under the then mandatory Sentencing Guidelines gave him a sentencing range of 262 to 327 months.

The Presentence Report attributed 85.6 grams of cocaine base to Defendant, which is the total amount of cocaine base found on Defendant and codefendant Martinez. Before sentencing, Defendant objected to that amount. During the plea hearing, Defendant admitted through counsel that the total amount of cocaine base attributable to him was 32 grams. Plea Hearing Tr. May 6, 2003, at 19.

On July 24, 2003, the Court sentenced Defendant to 262 months of imprisonment with 8 years of unsupervised release.[9] Following Defendant's sentencing, on July 24, 2003, the Government filed a motion to dismiss the first count of the Superseding Indictment, which the Court granted that same day.[10]

After Defendant's sentencing, federal law changed the amount of crack cocaine needed to trigger certain penalties. Prior to this Motion, Defendant moved twice for a sentence reduction: first, on June 25, 2008 under the 2007 Crack Cocaine Amendment, and second, on November 17,

---

[9] *See* JUDGMENT (Doc. 48).
[10] *See* MOTION TO DISMISS (Doc. 50).

2010 under the Fair Sentencing Act of 2010, 124 Stat. 2372 (FSA).[11] Both times the Court denied Defendant's Motion based on Defendant's status as a career offender.[12]

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-319, 132 Stat. 5194 (Dec. 21, 2018) ("First Step Act") was enacted and made the FSA retroactive. This Motion followed.

## I.  LEGAL STANDARD

Before 2010, the statutory mandatory sentences for drug offenses involving crack cocaine were significantly higher than the statutory mandatory sentences involving powder cocaine by a 100 to 1 ratio. *Dorsey v. United States*, 567 U.S. 260, 263 (2012). In 2010, Congress passed the Fair Sentencing Act (FSA). By changing the quantities of crack cocaine necessary to trigger 21 U.S.C. § 841 offenses, the FSA reduced the crack to powder cocaine disproportion to an 18 to 1 sentencing ratio *Id*. at 264; FSA, 124 Stat. 2372.

Prior to the FSA, a defendant committed an 841(b)(1)(B) offense, also known as a B-Level offense, when a defendant possessed with intent to distribute 5 grams or more of a substance containing cocaine base. Without any enhancements, a B-Level offense has a statutory range of 5 to 40 years imprisonment. *See* FSA, 124 Stat. 2372, Sec. 2(a)(2); *see also Dorsey*, 567 U.S. at 269. After the FSA, the amount necessary to trigger a B-Level offense is 28 grams or more. *Id.* The FSA made possession with intent to distribute 5 grams or more of cocaine base a § 841(b)(1)(C) offense or a C-Level offense, which, without enhancements, has a statutory

---

[11] *See* MOTION TO REDUCE SENTENCE (Doc. 78) and DEFENDANT'S 18 U.S.C. § 3582(c)(2) MOTION OF SENATE BILL § 1789, THE FAIR SENTENCING ACT OF 2010 TO MODIFY, ADJUST OR CORRECT HIS SENTENCE DUE TO THE 18 TO 1 CRACK COCAINE/POWDER COCAINE RATION DISPARITY (Doc. 139).
[12] *See* ORDER DENYING MOTION FOR REDUCTION OF SENTENCE (Doc. 99); and ORDER REGARDING MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(2) (Doc. 148).

maximum sentence of 20 years imprisonment. *See* 21 U.S.C. § 841(b)(1)(c); *Dorsey*, 567 U.S. at 269.

The FSA took effect on August 3, 2010. *Dorsey*, 567 U.S. at 264. After its passage, the FSA applied both to offenses that occurred after the Act and to those defendants who offended prior to the Act but were sentenced after its effective date. *Id.* However, the FSA did not apply retroactively to those who had been sentenced prior to August 3, 2010.

Section 404(b) of the First Step Act authorizes the resentencing of defendants sentenced prior to August 3, 2010, "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Section 404 defines a "'covered offense' [as] a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010." *Id*. The First Step Act also provides that the Court may use its discretion to deny motions of otherwise eligible offenders since "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act, Section 404(c).

Both parties agree that Defendant is eligible under the First Step Act for consideration of a reduced sentence: Defendant pleaded guilty to a B-Level offense under § 841 (b)(1)(B); he was sentenced prior to August 3, 2010; and his sentence has not been previously reduced under the FSA.

### III. ANALYSIS

At issue here is whether the Court should exercise its discretion to reduce Defendant's sentence. Defendant argues that his charged offense, possession with intent to distribute 5 grams or more of base cocaine, is now only a C-Level offense, which has a lower statutory maximum sentence and thereby reduces his guidelines sentencing range. He asks the Court to reduce his

sentence to time served. The Government opposes a reduction, arguing that because Defendant pleaded guilty to a B-Level offense and his conduct supports a B-Level offense, the Court should decline to reduce his sentence.

Generally, whether a defendant is convicted or pleads guilty to a B-Level offense or a C-Level offense does not directly impact a defendant's sentence.[13] Under the Sentencing Guidelines, a defendant's offense level and the corresponding guidelines range depend not on the category of the offense as described in § 841, but on the quantity of drugs involved.[14] For example, as in this case, when a defendant is charged with possession with intent to distribute 5 grams or more of a mixture and substance containing cocaine base, but the facts establish through trial or through a plea agreement that a defendant had 32 grams of cocaine base, his offense level would be determined by the drug quantity table found in sentencing guideline § 2D1.1. Under the current guidelines, possession with intent to distribute 32 grams of cocaine base would result in an offense level of 24. *See* U.S.S.G. § 2D1.1(c)(8).

However, the drug quantity tables did not play a part in Defendant's sentence because the Court sentenced him as a career offender. Under the career offender guideline delineated in § 4B1.1, a defendant's offense level is based on the statutory maximum of the charged offense. The term "offense statutory maximum" is defined in the Commentary as the "maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or a controlled

---

[13] While the level of the offense does not directly impact a defendant's sentence, it indirectly does as the drug quantity table and its offense levels are informed by the statutory maximum of the charged offense. *See Dorsey*, 567 U.S. at 266-267.

[14] Of course, "a judge may add or subtract levels depending upon the 'specific' characteristics of the offender's behavior." *Dorsey*, 567 U.S. at 266 (brackets omitted). But a court must sentence a defendant to "at least the minimum prison term set forth in a statutory mandatory minimum" and not beyond "the maximum contained in the federal sentence setting forth the crime of conviction." *Id.*

substance offense, including any increase in that maximum term under a sentencing enhancement provision." U.S.S.G. § 4B1.1(b), App. Notes, cmt. 2. Thus, the category of offense becomes highly relevant. Once the amount of charged cocaine base is within the range described in the charged offense, the actual quantity of cocaine base is not significant. The statutory sentencing range for a B-Level offense with a career offender enhancement is ten years to life imprisonment, which has an offense level of 37. *See* 21 U.S.C. § 841(b)(1)(B). In contrast, the statutory sentencing range for a C-Level offense with a career offender enhancement is not more than 30 years, which has an offense level of 34. *See* 21 U.S.C. § 841(b)(1)(C).

While the Government does not dispute Defendant's eligibility for a sentence reduction under the First Step Act, the Government argues that the Court should not exercise its discretion to reduce Defendant's sentence because his admitted conduct of possession of 32 grams or more of cocaine base supports a § 841(b)(1)(B) offense. According to the Government, an analysis focused on Defendant's admitted conduct rather than the language of Defendant's charged offense is appropriate because only a conduct analysis acknowledges that the Government's likely intent was to charge a § 841(b)(1)(B) offense.

Defendant argues that to read the First Step Act the way the Government proposes is to turn the First Step Act on its head. According to Defendant, a court must first examine the appropriate sentence based on the described offense of conviction, not on the conduct leading to the conviction. Defendant cites *United States v. Pierre*, 372 F.Supp.3d 17 (D.R.I. 2019) as support.

*Pierre*'s facts are on point. As in this case, the defendant in *Pierre* was sentenced as a career offender. One count of his two-count indictment was for possession with intent to distribute 5 grams or more of cocaine base under § 841(b)(1)(B). *Pierre*, 372 F.Supp. at *3. Like

Defendant, the *Pierre* defendant had an offense level of 37, with a criminal history category of VI. After a three-level reduction for acceptance of responsibility, the defendant had a guidelines range of 262 to 327 months of imprisonment. *Id*. During the plea colloquy, the defendant admitted to possession with intent to distribute 28.77 grams of cocaine base. *Id.* In 2007, the court sentenced him to 188 months. *Id.* After the passage of the First Step Act, the defendant moved to have his sentenced reduced. *Id.*

As here, the Government in *Pierre* argued that the defendant's conduct in possessing 28.77 grams controlled in interpreting his § 841(b)(1)(B) conviction and consequently, the court should decline to exercise its discretion to reduce the defendant's sentence. The defendant countered that the language of the offense of conviction controlled. The *Pierre* court rejected the Government's approach, finding the defendant's approach more "sensible." *Pierre*, 372 F.Supp. at *5

The *Pierre* court reasoned that the Government's approach was "problematic in several ways." *Id*. First the Government's approach would require the court to engage in a speculative inquiry by examining how the prosecutor might have charged the offense if the FSA had been in effect. *Id.* Next, the Government's approach ignored that "the new Guidelines mirror the new statutory minimums" and for defendants "who [are] sentenced above the statutory minimum, it is the change in the Guidelines that drives, as a practical matter, any change in the sentence." *Id.* (further citation omitted). Finally, the *Pierre* court observed that relief under the First Step Act is discretionary, so it makes sense that Congress intended to give a certain class of defendants a "do over." *Id.* The court concluded that because the First Step Act was ambiguous, the rule of lenity applied, and the court reduced defendant's sentence. *See also United States v. Dodd*, No. 3:03-cr-00018-3, 2019 WL 1529516, at *2 (S.D. Iowa Apr. 9, 2019) ("The First Step Act . . . applies to

the offenses and not conduct."). Numerous courts have followed *Pierre*. *See United States v. Allen*, , No. 3:96-cr-00149, 2019 WL 1877072, *3 (D. Conn. April 26, 2019) (finding the reasoning of *Pierre* and *Dodd* persuasive); *United States v. Brown*, No. 07-354(1), 2019 WL 1895090, *2, Case (D. Minn. April 29, 2019) (same); *United States v. Ancrum*, No. 5:02-CR-30020, 2019 WL 2110589 *4 (W.D. Va. May 14, 2019) (same); *United States v. Antonio Welch*, No. 7:10-CR-0054-008, 2019 WL 2092580, *4 (W.D. Va. May 13, 2019) (same); U*nited States v. Smith*, ---- F.Supp.3d ----, 2019 WL 2092581, *4 (W.D. Va. May 13, 2019) (same); *United States v. Stanback*, ----F.Supp.3d ----, 2019 WL 1976445, *4 (W.D. Va. May 2, 2019) (same); *United States v. John London Bradshaw*, No. 2:05-cr-17-01, 2019 WL 2290595, *2 (W.D. Mich. May 15, 2019) (same).

The Government argues that *Pierre* is not persuasive because it does not address the policy concerns animating the Sentencing Guidelines. The Government contends that a finding that Defendant is entitled to a reduction would result in sentencing disparities and a corresponding windfall to Defendant. The Government cites *Dorsey* in support of its argument.

In *Dorsey*, the Supreme Court examined whether the FSA applied to those offenders who had committed their offense prior to the enactment of the FSA but who had not yet been sentenced as of its effective date. *Dorsey*, 567 U.S. at 264. In finding that the FSA did apply to all offenders not sentenced as of the effective date of the FSA, the Supreme Court explored the policies behind the Sentencing Guidelines. The Government correctly asserts that *Dorsey*'s holding relied, in part, on rejecting the unfair sentencing disparities that both the Sentencing Guidelines and the FSA were meant to prevent. *Dorsey*, 567 U.S. at 276. However, *Dorsey* does not support the Government's argument because at its core the Government's argument is not about disparities in sentencing but about differences in charging decisions.

According to the Government, if the FSA had been enacted when the prosecutor sought an indictment against Defendant, the prosecutor would have charged 28 grams or more because the prosecutor intended to obtain a conviction for a B-Level offense. But this argument ignores a crucial point. Speculation about the prosecutor's intent would require the Court to conduct a similar examination of Defendant's intent. While the plea agreement may signal the Government's intent to charge a § 841(b)(1)(B) agreement, the charged conduct of 5 grams or more may also have been a crucial factor in Defendant's decision to plead. Nothing in the First Step Act suggests that the Court should speculate about what could or would have been done under other circumstance.[15]

The Guidelines policy statement is also instructive on how the Court should evaluate a First Step Act motion. *See* U.S.S.G., Ch. 1, Pt. A., Sec. 4(a). When the Commission first began working on developing the guideline rules, it identified two approaches to sentencing: a real offense approach and a charge offense approach. A real offense approach "base[s] sentences upon the actual conduct in which the defendant engaged regardless of the charges for which he was indicted or convicted." *Id*. In contrast, a charge offense approach bases sentences on the "conduct that constitutes the elements of the offense for which the defendant was charged and of which he was convicted." *Id.* The Commission chose to adopt the charge offense approach. *Id*. In acknowledging that the charge offense system has drawbacks, the Commission wrote its rules to include many real offense elements as well as elements meant to prevent the "unfair treatment"

---

[15] For example, if the Court were to speculate, it might be noteworthy that the prosecutor in this case dropped the higher conspiracy charge, which was an A-Level offense, in Defendant's two-count Superseding Indictment.

10

that might flow from a prosecutor's discretionary power. *Id*. The Career Offender Guideline takes the charge offense approach.

The Career Offender Guideline's offense levels are correlated with the statutory maximum of a defendant's charged offense. This reading is underscored by the Career Offender's definition of "offense statutory maximum" as the "maximum term of imprisonment authorized for the offense of conviction". U.S.S.G. § 4B.1.1(b), App. Notes, cmt. 2. To read the Career Offender Guideline the way the Government urges would rewrite the language of the guideline.

The Court finds that the First Step Act read in context with the Sentencing Guidelines requires the Court first to determine what sentence a defendant would have received for the charged offense after the passage of the FSA. Next, while the First Step Act gives the Court discretion to decline to reduce the imposed sentence, such discretion should be exercised within the § 3553(a) factors, not based on speculation about what the prosecutor could have charged or the offense to which a defendant could have pleaded should the FSA have been in place when a defendant committed the offense.

Defendant pleaded guilty to possession with intent to distribute 5 grams or more of a mixture and substance containing cocaine base. At the time, his offense had a statutory maximum of life. After the FSA, his offense carries a statutory maximum of 30 years. His offense level under the Career Offender Guideline is 34. After a 3-level reduction for his acceptance of responsibility, his offense level is 31, with a sentencing range of 188 to 235 years. He has currently served over 196 months. Having considered the factors under 18 U.S.C. § 3553(a), the Court finds that Defendant's period of incarceration has been sufficient, and the Court will reduce his sentence to time served.

IT IS ORDERED THAT:

1. Defendant's EMERGENCY AMENDED MOTION FOR RESENTENCING PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018 is GRANTED;

2. Defendant's sentence will be reduced to 196 months or the time he will have already served, whichever is less, on the date of resentencing.

_____
SENIOR UNITED STATES DISTRICT JUDGE